OPINION OF THE COURT
Herman Cahn, J.
Plaintiff moves for an attachment of funds deposited in a certain account maintained by nonparty Kamchatsky Agnoprombank Russia (KAR) at nonparty Citibank, N. A. (Citibank). KAR and Citibank challenge plaintiffs motion for an attachment and seek vacatur of a temporary restraining order (TRO) entered by this court (Saxe, J.) and thereafter continued by this court (Cahn, J.) pending decision.
The facts in this action have been stated in the court’s previous decision of September 29, 1994 and need only brief reiteration here. Plaintiff is an English corporation engaged in the business of importing fish into the United Kingdom. Plaintiff and defendants entered into a contract dated December 17, 1993 whereby plaintiff agreed to purchase approximately 90,000 cases of canned salmon from defendants for $3,290,000. Defendants, Russian companies, are not themselves producers of the salmon but act as middlemen between the producers and importers. After the salmon arrived at a British port in May 1994, and initial approval was given by the local health authorities, at defendants’ direction, plaintiff made three payments to the KAR account maintained at Citibank in the aggregate amount of $2,477,595.02. Thereafter, the local health authorities allegedly found bacteria in the canned salmon and refused to permit the salmon to be imported into the United Kingdom.
Sidwell commenced an action for breach of contract against defendants and sought an attachment of the funds deposited in the KAR account. Defendants have not appeared in this action and are in default. In its prior decision, this court determined that plaintiff is entitled to an order of attachment against any interest defendants may have in the funds deposited in the KAR account. Citibank and KAR argue that attachment of the KAR account is improper because, at the time the TRO was served, KAR had already obtained title to the funds in the KAR account and no attachable interest of defendants existed in the KAR account.
The court in its prior decision held in relevant part: "The core issue to be resolved is whether KAR, under the correspon *641 dent bank relationship with Citibank, was merely an agent for collection for its depositors, such as defendants, or whether KAR obtained title to funds transferred into the KAR account upon its subsequent credit of such funds, in local currency, to its depositors’ local KAR bank accounts. Depending on the outcome of this issue, whether the TRO was timely served on Citibank may or not be relevant. If KAR is an agent for collection, thus never obtaining title to the funds in the KAR account, then when the TRO was served is irrelevant. On the other hand, if KAR obtained title to the funds in the KAR account, then the timing of service of the TRO becomes important. For instance, if the TRO was served after KAR obtained title, then plaintiff has no right to attach the KAR account.” (Sidwell & Co. v Kamchatimpex, Sup Ct, NY County, Sept. 29, 1994, Cahn, J., index No. 117744/94, at 6-7.)
The court further held that the exact nature of the correspondent banking relationship between KAR and Citibank to be a determining factor relying on Acorn Flooring Co. v North Memphis Lbr. Co. (98 NYS2d 18 [Sup Ct, Bronx County 1950]). The court further held: "Here, although there is ample evidentiary support concerning the financial relationship between KAR and Citibank, noticeably absent is any proof of the financial arrangement between KAR and its depositors, such as defendants. The burden of coming forward with evidence demonstrating that KAR obtained title to the funds in the KAR account is on KAR. In view of the absence of such an agreement, a determination cannot be made at this time concerning the financial relationship between KAR and defendants. Therefore, the court directs that an immediate hearing be held so as to resolve this dispositive issue, (see, CPLR § 6221). In so directing, the court is mindful of the concerns expressed by Citibank, namely that '[i]f, in a case where KAR did not have any part in the dispute between Sid-well and the defendants, the Citibank account of KAR is attached, it would be at the cost of diminution in confidence in the system of correspondent banking that is invaluable to international financial transactions’ ” (Sidwell & Co. v Kamchatimpex, Sup Ct, NY County, Sept. 29, 1994, Cahn, J., index No. 117744/94, supra, at 8-9).
A hearing was subsequently held before the court, and the issues have been fully briefed.
The affidavit of Marie Robson, vice-president of Citibank, dated July 12, 1994 submitted in support of Citibank’s motion to vacate the temporary restraining order and admitted at the *642 hearing by stipulation of the parties sets forth the nature of a correspondent bank account maintained at Citibank. Essentially a foreign financial institution, such as KAR, that is unable to operate a branch or subsidiary office in the United States maintains a dollar account at a Citibank, to effect United States dollar transactions for itself and its customers. The account is maintained in the name of the foreign financial institution. The funds in the account belong to the foreign financial institution and no client of such institution is authorized to withdraw funds from the account.
When transfers are made into a correspondent account, Citibank advises the foreign financial institution of the transfer. The foreign financial institution then presumably makes a disbursement of funds at one of its branches upon demand by its customer. No funds are wired or transferred from the correspondent account to the customers’ account at the foreign institution. Citibank does not investigate or clear the underlying transactions upon which deposits are made into the correspondent account.
The Robson affidavit states, and the evidence adduced at the hearing show, that on June 15, 1994 plaintiff caused payments of $1,238,870.80 and $66,315 to be transferred into KAR’s correspondent account at Citibank. On June 16, 1994 plaintiff caused an additional $1,172,324.40 to be transferred into that account. Citibank advised KAR in Russia of the transfers on June 15 and 16,1994 respectively. Since KAR is located in Kamchatka on Russia’s Pacific coast, its time zone is 17 hours ahead of New York. Accordingly, the Citibank notification was received by KAR on June 16 and 17, 1994 Russian time. The TRO was served upon Citibank on June 17, 1994 (June 18 in Russia) and upon KAR’s United States representative on June 20, 1994 (June 21 in Russia).
The crucial testimony at the hearing was given by Dimitry M. Povzner, chairman of the board of KAR. The court found Mr. Povzner’s testimony to be credible and honest. His demeanor and responses gave veracity to his answers. The court attributes the minor confusion in his testimony to the vast differences between the nature and forms of commercial transactions in general, and banking in particular, in the United States and Russia. The court takes judicial notice that since the fall of communism and the Soviet Union, Russia has endeavored to create a free market with much difficulty and its banking system is in flux. The court also notes that the use of an interpreter, despite her great efforts, diminished the *643 fluidity of Povzner’s testimony especially in view of the highly technical nature of much of his testimony.
Povzner testified that prior to 1990, KAR was a State-owned bank. With the restructuring of the banking system, KAR became a publicly owned bank with approximately 2,000 shareholders and 19 branches serving the fishing and agriculture industries in Kamchatka. Povzner has been chairman of the board since 1990.
Povzner testified that only banks licensed by the Central Bank of Russia such as KAR may maintain hard currency accounts abroad. KAR opened its correspondent account with Citibank in 1992 to meet the needs of clients who conduct transactions that generate hard currency. Povzner testified that its clients have no control over the account. Its clients typically direct payments of hard currency to be made into the KAR account. Upon notification of receipt of such deposits, KAR credits the client’s accounts in Russia.
Each client that transacts business for payments in hard currency maintains two accounts at KAR in Russia, a transitory account and a current account. The transitory account is required by the Russian government so it can control hard currency transactions. At least 50% of hard currency credited to a client’s transitory account must be sold or converted into Russian rubles within 14 days. The money that is not converted to rubles is transferred to the current account and may be converted to rubles or held in dollars. Any conversion of dollars to rubles is done by book entry and no actual sale of the hard currency occurs. Nor does KAR transfer actual money from the correspondent account to its client’s accounts in Russia; rather, the transfers are made by book entry.
The evidence showed that when KAR received notice of payments into its correspondent account, it credited the defendant’s accounts in Russia on June 15 and 16 New York time (June 16 and 17 Russian time). No withdrawal or debit was made to the correspondent account. The conversion of dollars to rubles took place on the same day by book entry. Povzner testified that representatives of defendants were waiting at the bank for notification of the hard currency deposits so that they could process the transaction and use the proceeds quickly. Indeed, when the account of defendant Kamchatimpex (Impex) was credited it transferred money on the same date to defendant Inplan Limited (Inplan).
In response to the court’s TRO, Povzner issued an order dated June 21, freezing the accounts of Inplan and Impex as *644 well as of the actual producers of the canned salmon in a futile effort to protect the bank’s interests. Povzner was later notified by the local Russian public prosecutor that his action was illegal. In response, Povzner issued a second order on July 20, 1994 rescinding the freeze order. Contrary to plaintiff’s arguments, the court finds that the freeze order is not indicative of control of funds by Impex or Inplan in the KAR correspondent account. Rather the court finds that Povzner was merely acting to protect the bank’s interests by bringing pressure to bear on its depositors to settle or resolve the underlying dispute.
Plaintiff’s argument that defendants controlled the KAR correspondent account at Citibank is unsupported by the evidence. The fact that KAR clients directed payments to be made into the account in connection with export transactions does not signify any control over the account. Furthermore, Inplan’s correspondence with Citibank regarding the TRO does not show control over the account. This communication was apparently made in response to KAR’s internal freeze order that was later rescinded. The freeze order itself and subsequent rescission evidences that KAR had no control over or interest in defendants’ use of funds once their accounts were credited. Whether or not the defendants or producers were shareholders of KAR is not relevant to the issue of the control and operation of the KAR correspondent account at Citibank.
CPLR 6201 provides that an order of attachment may be granted in any action, other than matrimonial, where a money judgment is sought and the defendant is a foreign corporation not qualified to do business in the State or the defendant has transferred, encumbered, concealed, disposed of or removed his property from the State or is about to do any of those acts with the intent to defraud its creditors or frustrate the enforcement of a judgment that might be entered in plaintiff’s favor. Attachment serves two independent purposes: obtaining jurisdiction over, and securing judgments against, nondomiciliaries residing outside New York. (Elton Leather Corp. v First Gen. Resources Co., 138 AD2d 132; ITC Entertainment v Nelson Film Partners, 714 F2d 217 [2d Cir 1983].) Attachment is a harsh remedy and should be construed strictly against the moving party (Elton Leather Corp. v First Gen. Resources Co., supra; Siegel v Northern Blvd. & 80th St. Corp., 31 AD2d 182). The plaintiff’s right to attach a given item of property is only the same as the defendant’s own interest in it. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5201:15, at 70.)
*645 KAR and Citibank have met their burden of showing that KAR was not merely an agent for collection and that KAR obtained title to the funds transferred by plaintiffs into the correspondent account when it credited the defendants’ accounts in Russia. The evidence amply supports KAR and Citibank’s contention that defendants had no control over or interest in the correspondent account. Furthermore, KAR in operating the correspondent account was not merely acting as an agent for collection. The funds in the account belong to KAR and not to defendants.
The use of the correspondent account is an important instrument in facilitating international transactions. Public policy dictates that courts by their decisions not rewrite the operations and mechanics of this important device. Domestic and foreign banks should not become embroiled in controversies surrounding underlying transactions of which they have no knowledge or connection. Instead, the parties to the transaction have the obligation to protect their own interests within the transaction by either structuring the transaction in a manner sufficient to protect their interests, or demanding strict compliance with contractual terms, such as not releasing payment until the quality and quantity of goods are assured or not releasing goods until payment is assured. In the instant action plaintiff acted at its peril by making payment before final approval of the shipment by local health authorities. If New York permits correspondent bank accounts to be regularly subject to attachment after a credit has been made by a foreign bank to its local customers, the entire system of correspondent banking, in which New York banks play an important role, will be disrupted.
The cases relied upon by plaintiff are easily distinguishable. In U.R.C., Inc. v Applied Images (106 Misc 2d 1034), the court held that money held in an escrow account is subject to an attachment to the extent that the defendant had a contingent interest in any amount in excess of any sum required to satisfy certain exceptions for which the escrow fund was created. Significantly, and not mentioned by the plaintiff, the court also held that funds already paid from the escrow account, at a time that it was free from the temporary restraining order, are no longer in possession or custody of the garnishee and not attachable. In the instant action the funds in the KAR correspondent account were not in the possession or custody of the defendants at the time the TRO was served.
Similarly, plaintiffs reliance on ERA Mgt. v Morrison, Cohen, Singer & Weinstein (199 AD2d 179) is without merit. In *646 that action the evidence showed that a corporate plaintiffs bank accounts were regularly used by the individual plaintiff to pay personal expenses and the accounts functioned "as 'recipients’ of his personal assets.” (Supra.) Insufficient evidence was submitted herein to establish that defendants treated the KAR correspondent account in such manner. Plaintiffs reliance on Ray v Jama Prods. (74 AD2d 845) is also misplaced. In that action the Court held that payments to a theatrical company with a direct relationship to the theatrical performer /judgment debtor was in violation of the court’s TRO. (Supra.) The relationship between KAR and defendants in this action is only that of bank and customer. The court similarly rejects plaintiff’s contention that KAR and Citibank failed to comply with the holding in Acorn Flooring Co. v North Memphis Lbr. Co. (supra), as explained in this court’s previous decision. (Sidwell & Co. v Kamchatimpex, supra, at 7-8.)
Accordingly, the temporary restraining order is vacated and the motion for an attachment is denied.