[990 NE2d 121, 967 NYS2d 883]

VERIZON NEW ENGLAND, INC., Appellant, v TRANSCOM ENHANCED
SERVICES, INC., Respondent.

Argued March 20, 2013; decided May 2, 2013

## POINTS OF COUNSEL

*Gibson, Dunn & Crutcher LLP*, New York City (*Robert L. Weigel, Jason W. Myatt* and *Anne M. Coyle* of counsel), for appellant. I. Global NAPs, Inc.'s rights in its undisputed contract with Transcom Enhanced Services, Inc. are property of the judgment debtor in Transcom's possession. (*ABKCO Indus. v Apple Films*, 39 NY2d 670; *Matter of Supreme Mdse. Co. v Chemical Bank*, 70 NY2d 344.) II. The majority opinion of the Appellate Division is contrary to the public policy embodied in CPLR 5222. (*ABKCO Indus. v Apple Films*, 39 NY2d 670; *Matter of Supreme Mdse. Co. v Chemical Bank*, 70 NY2d 344.) III. Respondent's violation of the restraining notice entitles Verizon New England, Inc. to damages. (*Ray v Jama Prods.*, 74 AD2d 845; *Conde v Anton Adj. Co.*, 133 Misc 2d 998; *Syndicate Bldg. Corp. v City Univ. of N.Y.*, 159 Misc 2d 898; *Mazzuka v Bank of N. Am.*, 53 Misc 2d 1053; *Aspen Indus. v Marine Midland Bank*, 52 NY2d 575.)

*Arent Fox LLP*, New York City (*Hunter T. Carter* and *Matthew S. Trokenheim* of counsel), for respondent. I. The Supreme Court correctly denied turnover, dismissed the petition with prejudice, vacated any and all restraints, and denied Verizon New England, Inc.'s application to hold Transcom Enhanced Services, Inc. in contempt. (*ABKCO Indus. v Apple Films*, 39 NY2d 670; *Clarkson Co. Ltd. v Shaheen*, 533 F Supp 905; *Matter of Supreme Mdse. Co. v Chemical Bank*, 70 NY2d 344; *Gala Enters., Inc. v Hewlett Packard Co.*, 970 F Supp 212; *State Bank*

*v Central Mercantile Bank*, 248 NY 428; *Macklowe v 42nd St. Dev. Corp.*, 170 AD2d 388; *Verizon New England Inc. v IDT Dom. Telecom, Inc.*, 98 AD3d 838; *Conde v Anton Adj. Co.*, 133 Misc 2d 998; *Zemo Leasing Corp. v Bank of N.Y.*, 158 Misc 2d 991.) II. Public policy concerns do not favor imposing a restraint even though the garnishee has no obligation to the judgment debtor. (*ABKCO Indus. v Apple Films*, 39 NY2d 670.) III. Verizon New England, Inc. suffered no damages as a result of Transcom Enhanced Services, Inc. purchasing services from Global NAPS, Inc. IV. The appeal must be dismissed because Verizon New England, Inc. failed to settle the transcript of the proceeding. (*Matter of Baiko v Baiko*, 141 AD2d 635; *Matter of Zullo v Hom*, 22 AD3d 675; *Matter of Robinson v Fisher*, 275 AD2d 326; *Perry v Tauro*, 21 AD2d 804.)

## OPINION OF THE COURT

RIVERA, J.

In this appeal, we consider whether an at-will, prepayment service agreement, which lacks any obligation to continue services or a commitment to engage in future dealings, constitutes a property interest or debt subject to a CPLR 5222 (b) restraining notice. We conclude, based on the nature of the agreement, that the restraining notice is unenforceable and, therefore, affirm the Appellate Division order.

This case arises from efforts by Verizon New England, Inc. (Verizon) to collect a $57,716,714 judgment awarded in January 2009 by the United States District Court for the District of Massachusetts against, inter alia, Global NAPs, Inc. (GNAPs) (*see Global NAPs, Inc. v Verizon New England Inc.*, 603 F3d 71 [1st Cir 2010], *cert denied* 562 US —, 131 S Ct 1044 [2011]). On March 6, 2009, Verizon domesticated the judgment.

In its attempt to enforce the judgment, on April 2, 2009, Verizon served a restraining notice and information subpoena on GNAPs and companies with which it did business, one of which was Transcom Enhanced Services, Inc. (Transcom). The restraining notice directed Transcom not "to make or suffer any sale, assignment or transfer of, or interference with, any property in your possession in which [GNAPs] . . . has an interest." Verizon further directed Transcom to "[i]dentify any and all transactions, contracts, or agreements entered into" with GNAPs, and "identify the parties to the transaction; the date of the transaction; the amount of the transaction . . . and the

goods and services that are the subject of the transaction." Verizon also requested that Transcom "[i]dentify all receivables . . . or any other outstanding obligation owed by you" to GNAPs.

In February 2010, Transcom responded to the questions of the information subpoena. It identified a telephone switch service agreement dated October 21, 2003, that it had entered into with GNAPs. The agreement required a monthly recurring payment of $28,000 per circuit for eight circuits, plus an additional $57,000 per month for additional charges for local origination and termination services. As to "any receivables and outstanding obligations owed" to GNAPs, Transcom responded: "None. All payments are made in advance or contemporaneously with service." Additionally, Transcom annexed a Vendor Balance Detail (VBD), which listed payments made to GNAPs. The VBD reflected that on the day prior to receiving the restraining notice, Transcom received a $246,000 bill from GNAPs, which was paid by four checks issued April 1, 6, 15 and 21, each in the amount of $61,500. The VBD included the bills and payments through November 2009.

In March 2010, Verizon commenced this special proceeding seeking, inter alia, a turnover of property and debts of the judgment debtor held by Transcom, a judgment equal to the amount paid by Transcom to the judgment debtors in violation of the restraining notice, which amounted to $2,454,250, and a finding of civil contempt. Verizon based its claim upon the 2003 agreement between Transcom and GNAPs, which Verizon alleged created an ongoing contractual relationship requiring Transcom to pay GNAPs $281,000 per month. Transcom asserted that it did not violate the restraining notice because the GNAPs invoices predated services, and Transcom was under no obligation to accept those services. Thus, it did not owe any debt to GNAPs, and it did not hold property in which GNAPs had any interest.

During the proceedings, Transcom presented testimony that it had a week to week arrangement with GNAPs that allowed Transcom to decide weekly whether to engage GNAPs for services. Various Transcom witnesses testified that GNAPs sent monthly invoices for proposed services to be rendered the following month, and Transcom prepaid for services each week, rather than paying monthly for services rendered by GNAPs as provided by the 2003 contract.

Supreme Court, inter alia, denied turnover and dismissed the petition with prejudice (27 Misc 3d 1236[A], 2010 NY Slip Op

51073[U] [2010]). The court credited the testimony given by Transcom's executive officers and concluded "that there is no property or debt in the instant matter subject to a restraining order, levy or turnover pursuant to Article 52 of the CPLR" (2010 NY Slip Op 51073[U], *4). Verizon appealed.

In a 3-2 decision, the Appellate Division affirmed the judgment (98 AD3d 203 [1st Dept 2012]). The majority recognized "that a restraining notice is effective only if, at the time of service, the third party on whom the notice is served owes a debt to, or is in possession of property of, the judgment debtor" (*id.* at 204). However, the majority went on to observe that Transcom "owed no debt, but rather held a credit balance with GNAP[s] [and] the undisputed modified agreement between [the parties] dispensed with any contractual obligations or 'bundle of rights' that could be considered attachable property" (*id.* at 207). The two-Justice dissent concluded that GNAPs "had a 'future interest' in payments from Transcom that constituted property . . . which was subject to restraint" (*id.* at 217). Verizon appeals to this Court pursuant to CPLR 5601 (a).

A party seeking to enforce a judgment may seek to restrain or prohibit the transfer of a judgment debtor's property in the hands of a third party pursuant to CPLR 5222 (b). Section 5222 (b) states in relevant part,

> "A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, *at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest* . . . or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served" (emphasis added).

All such property or debt which thereafter comes into the possession or custody of such person is subject to the restraining notice (*see id.*). Section 5201 (a) and (b) provide that "[a] money judgment may be enforced against any debt, which is past due or which is yet to become due," or "any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested."

The Appellate Division here affirmed the Supreme Court's findings of fact, which are supported by the record (*see* Arthur Karger, Powers of the New York Court of Appeals § 13:10 at 489

[3d ed rev 2005] [facts affirmed by the Appellate Division with evidentiary support are "conclusive and binding on the Court"]). The affirmed findings established that Transcom prepaid for its service, and as such, there was no debt past due or yet to become due under the definition of CPLR 5201 (a). The only remaining issue is whether Transcom's oral agreement with GNAPs is an attachable property interest subject to restraint.

In *ABKCO Indus. v Apple Films* (39 NY2d 670 [1976]), we recognized that a contractual agreement could constitute contingent property interests attachable and assignable, and thus subject to CPLR 5201 (b) and article 62 of the CPLR. In that case, this Court held a licensing agreement entered into between a foreign debtor and a third party was an attachable interest because the licensing agreement, whereby the third party agreed to pay the debtor 80% of the net profits received from the promotion of a film, was deemed property (*see id.*). Verizon argues that the prepayment service agreement between Transcom and GNAPs fits squarely within our analysis in *ABKCO*, and created the type of property interests amenable to a restraining notice in accordance with CPLR 5201 (b) and consequently CPLR 5222.

We disagree. The agreement in this case is wholly distinguishable from the agreement in *ABKCO* and, thus, cannot be deemed an attachable or assignable property interest. In *ABKCO* the agreement set forth an obligation to pay the debtor, which constituted the "principal feature of economic significance" of the agreement (*id.* at 674). Here, when Transcom received the restraining notice it had an oral agreement that *if* Transcom paid GNAPs, GNAPs would provide one week's worth of services. This agreement was terminable at will, at any time, without prior notice, meaning that Transcom had no obligation after receiving one week's worth of services to engage GNAPs for another week's worth of services. Moreover, not only could Transcom unilaterally eliminate any possibility of future revenue from the contract, but so could GNAPs. In sum, the parties had no continuing contractual obligation to each other. Thus, each week, Transcom had no obligation to pay GNAPs. Accordingly, there was no debt, and no obligation "certain to become due" (*id.* at 675, citing *Glassman v Hyder*, 23 NY2d 354, 359 [1968]).

Thus, because Transcom prepaid for services to be provided by GNAPs on a week-to-week basis, without any commitment

or promise for additional services, or any assurance of a continued purchase of services, Transcom neither owed any debt to, nor possessed any property of, GNAPs that could be subject to a restraining notice. Similarly, because Transcom's payments to GNAPs constitute neither a debt nor a present or future property interest, CPLR 5201 (a) and (b) are not applicable.

Verizon makes much of the fact that Transcom has continued its relationship and has never terminated the agreement. In essence, Verizon argues that the agreement is automatic and Transcom and GNAPs expect continuation. The Appellate Division dissent also maintained that Transcom and GNAPs had "a highly regular and predictable business relationship" where it was reasonably certain that GNAPs would "continue to generate revenues" (98 AD3d 203, 216 [1st Dept 2012]). However, any arguments based on a characterization of the facts are unavailable to us given the Appellate Division's affirmance of the findings of fact. Moreover, the expectation of any continued or future business is too contingent in nature and speculative to create a present or future property interest. Although property is often described as a "bundle of rights," or "sticks," with relational aspects (*see generally* J.E. Penner, *The "Bundle of Rights" Picture of Property*, 43 UCLA L Rev 711, 712-713 [Feb. 1996]), here, the payment before the receipt of service and the ability to terminate the relationship at any time without penalty, cannot support a finding that a transferrable property right existed (*see generally Matter of Supreme Mdse. Co. v Chemical Bank*, 70 NY2d 344 [1987] [where the Court held an executory negotiable letter of credit is not property for purposes of attachment by a party in an unrelated litigation]). Moreover, the voluntary payments in this case are distinguishable from *ABKCO* where the potential for future obligatory payments provided some real basis for a property interest. Therefore, unlike *ABKCO*, there is no restrainable interest akin to the "collection of individual rights which, in certain combinations, constitute property" (*United States v Craft*, 535 US 274, 278 [2002]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, with costs.