13-3599-cv
*Mitchell v. Lyons Professional Services*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

        At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of September, two thousand fourteen.

PRESENT:

       José A. Cabranes,
       Denny Chin,
       Raymond J. Lohier, Jr.,
           *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Keesha Mitchell, Theresa Campbell, Seannette Campbell, Tanisha Selby,

      *Plaintiffs-Appellees*,

        -v.-                                         No. 13-3599-cv

Garrison Protective Services, Inc.,

      *Interested Party-Appellant,*

Lyons Professional Services, Inc., Richard Trim, Terry Tatum, Christopher M. Lyons,

      *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR INTERESTED PARTY-APPELLANT:**    Raymond A. Giusto, Law Offices of Raymond A. Giusto, P.C., West Bay Shore, NY.

**FOR PLAINTIFFS-APPELLEES:**        Chidi A. Eze, Brooklyn, NY.

Appeal from the September 5, 2013, judgment[1] of the United States District Court for the Eastern District of New York (Brian Cogan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED** and **REMANDED** for further proceedings consistent with this Order.

Interested Party-Appellant Garrison Protective Services, Inc. ("Garrison") appeals the order of the District Court granting plaintiffs' motion to enforce a judgment pursuant to New York Civil Practice Law and Rules ("CPLR") § 5225.

## BACKGROUND

In 2010, plaintiffs brought a sex-discrimination lawsuit against their employer Lyons Professional Services, Inc. ("LPS"), a security guard company, and won a default judgment in the total amount of $266,590. Plaintiffs then brought this motion under CPLR § 5225(b)[2] to enforce that judgment. Plaintiffs alleged that LPS, acting through its sole shareholder Christopher Lyons, fraudulently transferred its assets to Garrison, another security guard company, in violation of the New York Debtor and Creditor Law ("NYDCL") § 273-a.[3]

---

[1] Although the corrected judgment was entered September 5, 2013, it was dated November 12, 2013.

[2] This provision provides in full:

> **(b) Property not in the possession of judgment debtor.** Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.

N.Y. C.P.L.R. § 5225(b).

[3] This provision provides that:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is

After a bench trial, the District Court found that Lyons had entered into a "Consulting Agreement" with Garrison seven weeks after the entry of the default judgment, which remained unpaid. As part of that contract, Lyons agreed to attempt to steer accounts and clients then serviced by LPS to Garrison, in exchange for a consulting fee based on the annual revenues that they generated. LPS received nothing under the agreement. Once Garrison took over the LPS accounts, LPS was "essentially shut down." *Mitchell v. Lyons Prof'l Servs., Inc.*, No. 09 Civ. 1587 (BMC), 2013 WL 4710431, at *2 (E.D.N.Y. Sept. 1, 2013).

Based on these findings, the District Court determined that the accounts, or the "book of business," belonged to LPS, rather than Lyons, and that Lyons sold the book of business to Garrison. *Id.* at *5. It therefore concluded that "LPS transferred substantially all of its assets to Garrison despite plaintiffs' outstanding judgment and that LPS received no consideration for the transfer." *Id.* at *1. Accordingly, the District Court granted judgment against Lyons and Garrison, jointly and severally, in the amount of $266,590. Moreover, the District Court found that the "value of the LPS accounts exceed[ed] the amount of plaintiffs' judgment." *Id.* at *6. Accordingly, the District Court granted plaintiffs' motion to enforce and entered a corrected judgment on September 5, 2013, against Lyons and Garrison, jointly and severally, in the amount of $266,590. *Id.* at *7. Garrison appeals that judgment. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

## DISCUSSION

### A.     Applicable Law

"After a bench trial, . . . we review the district court's findings of fact for clear error and conclusions of law and mixed questions *de novo*." *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001).

Federal Rule of Civil Procedure 69(a)(1) provides for enforcement of judgments according to the practice and procedure of the state in which the district court is held. Article 52 of the CPLR, in turn, sets forth the procedures available for enforcement of judgments under New York law.

As relevant here, "[s]ection 5225(b) allows a judgment creditor to commence a proceeding to order a third party to turn over the judgment debtors' assets." *Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014). "The first section of Article 52 describes the assets that New York law has made subject to enforcement, and thus available to judgment creditors" seeking to collect under § 5225. *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo,*

---

fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a.

*S.A.*, 190 F.3d 16, 20 (2d Cir. 1999). That section, CPLR § 5201(b), provides that

> [a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.

N.Y. C.P.L.R. § 5201(b).

Section 5225(b) sets forth a mechanism for a judgment creditor to seek the return of property from a transferee. It provides "the means to set aside fraudulent transfers made by the judgment debtor to defraud creditors." David D. Siegel, Practice Commentaries, N.Y. C.P.L.R. 5225:7 (McKinney 1997). Professor Siegel notes:

> The subject of fraudulent conveyances is governed by Article 10 of the Debtor and Creditor law. Of special interest to the judgment creditor is § 273-a of that law, which provides that the mere pendency of a money action against a person makes any gratuitous transfer of property by that person fraudulent against the plaintiff should the plaintiff win the case.

*Id.* "To prevail on a claim under [NY]DCL § 273-a, a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006).

### B.     Application

Garrison contends that the book of business was not assignable or transferrable property because the contracts were terminable upon thirty days' notice. Therefore, it contends, the book of business was not subject to enforcement under CPLR § 5225(b).[4]

We have held that "[p]ursuant to § 5201(b), a money judgment can be enforced *only* against that property 'which could be assigned or transferred.'" *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*, 190 F.3d 16, 24 (2d Cir. 1999) (emphasis supplied). The property may be an intangible, future right, but cannot be a property right that is unassignable. That is, we have held that the "statute permits enforcement of a money judgment against any property which could be assigned or transferred, whether or not it is vested." *Marshak v. Green*, 746 F.2d 927, 931 (2d Cir. 1984). But at the same time, if the debtor's rights in the property do not include the right to assign or transfer it, it is not "property" for the purposes of § 5201. *See ABKCO Indus., Inc. v. Apple Films,*

---

[4] Garrison also raises a number of additional arguments on appeal, which we do not address because we conclude that there is insufficient evidence from which to conclude that the LPS accounts that Lyons steered from LPS to Garrison were "property" for the purposes of CPLR § 5201.

*Inc.*, 39 N.Y.2d 670, 674 (1976) ("We conclude that [the debtor's rights under the contract] constituted property. . . . *That property was attachable because concededly it was assignable by [the debtor].*" (emphasis added)); *see also Sidwell & Co. v. Kamchatimpex*, 632 N.Y.S.2d 455, 459 (N.Y. Sup. Ct. 1995) ("The plaintiff's right to attach a given item of property is only the same as the defendant's own interest in it.").

Despite that broad definition, some types of contingent interests are too speculative, as a matter of law, to constitute "property" under New York law. In a recent case, the New York Court of Appeals addressed a prepaid service contract that was "terminable at will, at any time, without prior notice" and created "no obligation" on the part of the debtor. *Verizon New England, Inc. v. Transcom Enhanced Servs., Inc.*, 21 N.Y.3d 66, 71 (2013). In interpreting the scope of "property," the court concluded that

> the expectation of any continued or future business is too contingent in nature and speculative to create a present or future property interest. Although property is often described as a "bundle of rights," or "sticks," with relational aspects, here, the payment before the receipt of service and the ability to terminate the relationship at any time without penalty, cannot support a finding that a transferrable property right existed.

*Id.* at 72 (citation omitted); *see also In re Thelen LLP*, 2014 WL 2931526, at *5 (N.Y. July 1, 2014) ("[N]o law firm has a property interest in future hourly legal fees because they are 'too contingent in nature and speculative to create a present or future property interest,' given the client's unfettered right to hire and fire counsel." (quoting *Verizon New England*, 21 N.Y.3d at 72)); *In re Thelen LLP*, No. 12-4138-BK, 2014 WL 3844145 (2d Cir. Aug. 6, 2014) (adopting New York Court of Appeals answer to certified question).

Here, the record is insufficient to conclude that the "book of business" was property for the purposes of § 5201.

As a general matter, a company's assets may include its book of business. *See, e.g., Bartfield v. Murphy*, 578 F. Supp. 2d 638, 647 (S.D.N.Y. 2008) (characterizing "book of business" as asset of relevant company under New York law); *In re Williams*, 354 B.R. 604, 609 (Bankr. N.D.N.Y. 2006) (explaining renewals that comprise "book of business" of insurance company are "clearly property" (internal quotation marks omitted)). A company's book of business can include existing contracts, customer lists, leads for potential business, and other proprietary information. Even contracts that are terminable on thirty days' notice will generate at least thirty days' revenue, and, where, as here, the contracts are annual contracts, there may be value in the likelihood that they will not be terminated and instead will be renewed.

Further, at least in some cases, a book of business may be transferred. *See, e.g., Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 511 (S.D.N.Y. 2001) (discussing asset purchase agreement

providing for sale of plaintiff's "right, title and interest in" his "[b]ook of [b]usiness"); *In re Williams*, 354 B.R. at 609 (insurance company's "book of business" was transferrable asset); *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 53 (Bankr. S.D.N.Y. 1999) (noting company "decided that it would be in the best interest of its shareholders to sell its book of business and propose a scheme of arrangement to its creditors" (footnote omitted)).

But whether any given "book of business" is assignable or not (and who it is assignable by) will depend at least in part on the language of the individual contracts involved. None of the LPS contracts were introduced at trial, nor is there any evidence that an assignment of the book of business actually took place. Although they were annual contracts, all of the LPS contracts had 30-day termination clauses that could be exercised for any reason by either the client or the company. *See* Joint App'x 219–20. Accordingly, it is unclear whether Lyons transferred the clients' contracts directly to Garrison, or instead abrogated the contracts with LPS and thereafter brought the clients to Garrison. Questions also exist as to whether the book of business contained other property, such as customer lists or other proprietary information, and, if so, whether such property was transferable. If the book of business was, in fact, transferred from LPS to Garrison, then it is property for the purposes of § 5201(b). If, however, the LPS clients simply took their business elsewhere, it is not.

It is not clear from the District Court's opinion that it considered these questions. On the one hand, it made a finding that "LPS *transferred* substantially all of its assets *to Garrison* despite plaintiffs' outstanding judgment." *Mitchell*, 2013 WL 4710431, at *1 (emphasis supplied). But at the same time, it described the putative transfer as a solicitation for LPS customers to bring their business to Garrison:

> As to any services provided to Garrison by Mr. Lyons after execution of the Consulting Agreement, the record shows that *Mr. Lyons made the introduction of the LPS clients to Garrison* and either based on his recommendation of Garrison or the mere fact that he advised clients that he was shutting down LPS, or both, *the clients agreed to move their business to Garrison*. There were some telephone calls by Mr. Lyons to Garrison thereafter but the record contains no indication that he actually provided any services beyond his *initial endorsement of Garrison to LPS' clients*.

*Id.* at *3 (emphasis supplied). Because of these somewhat ambiguous conclusions and the incomplete nature of the record, we remand the cause for additional proceedings and further clarification by the District Court.

## CONCLUSION

We have reviewed the record and the parties' arguments on appeal. For the reasons set out above, we **VACATE** the judgment of the District Court, entered September 5, 2013, and **REMAND** for further proceedings consistent with this Order.[5]

<div style="margin-left: 45%;">

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

</div>

---

[5] Christopher Lyons has not appealed the judgment against him. Accordingly, our Order has no effect on the outstanding judgment against him.