15-2137-cv
*Mitchell v. Garrison Protective Servs., Inc.*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2015

No. 15-2137-cv

KEESHA MITCHELL, THERESA CAMPBELL,
SEANNETTE CAMPBELL, TANISHA SELBY,
*Plaintiffs- Appellees*,

v.

GARRISON PROTECTIVE SERVICES, INC.,
*Interested Party-Appellant*,

LYONS PROFESSIONAL SERVICES, INC., RICHARD TRIM,
TERRY TATUM, CHRISTOPHER M. LYONS,
*Defendants.*

On Appeal from the United States District Court
for the Eastern District of New York

SUBMITTED: APRIL 4, 2016
DECIDED: APRIL 11, 2016

Before: KEARSE, CABRANES, and CHIN, *Circuit Judges*.

———————

This case primarily involves a challenge by interested party-appellant Garrison Protective Services, Inc. ("Garrison") to various factual determinations made by the District Court (Brian M. Cogan, *Judge*) in the course of granting a motion to enforce a judgment. We conclude that the District Court did not err, much less clearly err, in those determinations, and therefore **AFFIRM** the June 16, 2015 judgment of the District Court. We also conclude that the District Court properly construed plaintiffs' motion pursuant to New York Civil Practice Law and Rules ("CPLR") § 5225 as a plenary action pursuant to New York's substantive law of fraudulent transfers.

———————

Chidi A. Eze, Brooklyn, NY, *for Plaintiffs-Appellees*.

Raymond A. Giusto, Law Offices of Raymond A. Giusto, P.C., West Bay Shore, NY, *for Interested Party-Appellant*.

———————

PER CURIAM:

Interested party-appellant Garrison Protective Services, Inc. ("Garrison") appeals from a June 16, 2015 judgment of the District

2

Court, which followed a decision of June 8, 2015, granting a motion by plaintiffs-appellants Keesha Mitchell, Theresa Campbell, Seannette Campbell, and Tanisha Selby ("plaintiffs") to enforce a judgment.

This case originated in a sex-discrimination lawsuit by plaintiffs against their former employer, Lyons Professional Services, Inc. ("LPS"), a security guard company. We described the underlying action in *Mitchell v. Lyons Professional Services, Inc.*, 708 F.3d 463, 465–66 (2d Cir. 2013) ("*Mitchell I*"). Plaintiffs obtained a default judgment of $266,590, and then sought to enforce it pursuant to Rule 69(a) of the Federal Rules of Civil Procedure. Rule 69(a)(1) provides, in relevant part, that the "procedure on execution" in federal court upon a money judgment "must accord with the procedure of the state where the court is located." Accordingly, because plaintiffs sought to enforce a judgment in the Eastern District of New York, they made their motion pursuant to New York state law—specifically, New York Civil Practice Law and Rules ("CPLR") § 5225.[1]

---

[1] CPLR § 5225(b) provides in full:

**(b) Property not in the possession of judgment debtor.** Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of

As relevant here, plaintiffs alleged that LPS, acting through its sole shareholder, Christopher Lyons ("Lyons"), fraudulently transferred its assets to Garrison, another security guard company, in violation of New York Debtor and Creditor Law ("DCL") § 273-a.[2] Following a bench trial, the District Court found that Lyons had entered into a "Consulting Agreement" with Garrison seven weeks after entry of the default judgment. *Mitchell v. Lyons Prof'l Servs., Inc.*, No. 09-Civ.-1587 (BMC), 2013 WL 4710431, at *1 (E.D.N.Y. Sept. 1, 2013) ("*Mitchell II*"). The District Court further found that "[a]s part of that contract, Lyons agreed to attempt to steer accounts and clients then serviced by LPS to Garrison, in exchange for a consulting fee

the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.

[2] DCL § 273-a provides that "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

4

based on the annual revenues that they generated." *Mitchell v. Garrison Protective Servs., Inc.*, 579 F. App'x 18, 20 (2d Cir. 2014) ("*Mitchell III*"). "LPS received nothing under the agreement," and after "Garrison took over the LPS accounts, LPS was essentially shut down." *Id.* (internal quotation marks omitted).

Based on these and other findings, the District Court determined that the customer accounts in question—also known as LPS's "book of business"—were assets that LPS had fraudulently transferred to Garrison, and that the value of those assets exceeded the value of plaintiffs' default judgment. Accordingly, the District Court granted plaintiffs' motion and entered a judgment against Lyons and Garrison, jointly and severally, for $266,590. *Id.*

Garrison appealed. As relevant here, Garrison argued that LPS's book of business was not subject to enforcement pursuant to CPLR § 5225(b). That section authorizes execution only against the assets specified in CPLR § 5201(b), which provides in relevant part that "[a] money judgment may be enforced against any property which could be assigned or transferred." LPS's book of business was not assignable or transferrable, Garrison argued, because it consisted only of contracts that were terminable on thirty days' notice.

We determined that the record was insufficient to rule conclusively on Garrison's argument, and we remanded the cause to the District Court for further clarification. *Mitchell III*, 579 F. App'x at 23. In particular, we asked the District Court to consider whether the book of business was assignable or transferrable: "If the book of

business was, in fact, transferred from LPS to Garrison, then it is property for the purposes of § 5201(b). If, however, the LPS clients simply took their business elsewhere, it is not." *Id.* We also asked the District Court to consider whether the book of business "contained other property, such as customer lists or other proprietary information," that might have been transferrable. *Id.*[3]

On remand, the District Court reframed our question. Because plaintiffs brought their motion pursuant to CPLR § 5225(b), we had treated this case as turning on whether LPS's book of business was transferrable property under CPLR § 5201(b). *See Mitchell III*, 579 F. App'x at 21. But as the District Court rightly points out, and as we recognized in *Mitchell III*, § 5225(b) creates a *procedural* mechanism by which judgment creditors can enforce a money judgment, rather than a new *substantive* right. *See N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 717 F.3d 266, 267 (2d Cir. 2013).

That mechanism, known as a "special proceeding," has no equivalent under the Federal Rules of Civil Procedure, which "recognize only 'one form of action—the civil action.'" *See Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015) (quoting Fed. R. Civ. P. 2). It is unclear, therefore, "how a party in federal court in New York satisfies the 'special proceeding' requirements of"

---

[3] As our use of the word "contained" suggests, the term "book of business" tends to conflate the physical list of accounts or clients with the value of the accounts or clients themselves. *Cf. Book of Business*, *Black's Law Dictionary* (10th ed. 2014).

§ 5225(b). *See Vera*, 802 F.3d at 244 n.3 (noting that we have never addressed this question in a published opinion).

What is clear, however, is that a special proceeding under § 5225(b) is not the only mechanism for avoiding a fraudulent transfer in New York. Rather, creditors may instead bring a plenary action to avoid the transfer under New York substantive law. *See, e.g.,* *Friedman v. Friedman*, 509 N.Y.S.2d 617, 618 (2d Dep't 1986) ("[T]he remedies provided in the Debtor and Creditor Law governing fraudulent conveyances . . . are properly sought by way of a plenary action . . . .").

Because there is no such thing as a "special proceeding" in federal court, we have afforded district courts in New York some leeway in determining whether to construe a particular fraudulent-transfer suit as a plenary action or a special proceeding. For instance, we have suggested that federal courts may construe an action pursuant to DCL § 273-a as "a plenary action based on New York substantive law," even if "the parties . . . assumed that [§] 5225(b) provide[d] the procedural basis" for the suit. *See HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 n.7 (2d Cir. 1995). Similarly, we have indicated in dicta "that the filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues." *See Vera*, 802 F.3d at 244 n.3.

These considerations lead us to conclude that although plaintiffs initially described their motion as having been filed

pursuant to § 5225(b), the District Court properly construed it as a plenary action. Several observations specific to this case reinforce our conclusion. As the District Court noted, many aspects of the proceeding below conformed more closely to the form of a plenary action than that of a special proceeding.[4] Moreover, Garrison has not shown that it suffered any prejudice from the Court's decision to recast plaintiffs' motion, nor has Garrison argued that a plenary action is improper under New York law or Rule 69(a).[5] We note, finally, that plaintiffs assert a substantive right derived from the DCL, not from CPLR Article 52 itself. *Cf. Cruz v. TD Bank, N.A.*, 742 F.3d 520 (2d Cir. 2013) (noting that an Article 52 special proceeding is the exclusive mechanism for relief for violations of the Exempt Income Protection Act, which is codified in scattered sections of CPLR Article 52).

---

[4] For instance, the proceeding before the District Court involved more extensive discovery than would normally be available in a special proceeding. *See Mitchell v. Lyons Prof'l Servs., Inc.*, 109 F. Supp. 3d 555, 566 (E.D.N.Y. 2015) ("*Mitchell IV*").

[5] For instance, Garrison notes that plaintiffs' motion "relied upon New York Debtor-Creditor Law[ ] §§ 273, 274, 276 and 278," and that "[t]hose statutes were the only applicable law before the Court and the basis upon which Garrison defended the motion." Garrison Br. 5. Similarly, while Garrison's brief on appeal discusses DCL § 273-a and related DCL provisions in great detail, it does not cite CPLR § 5201, much less argue that its definition of transferable property should control here. We also note that § 273-a was invoked early in this litigation, which gave sufficient notice to allow Garrison to defend against arguments relevant to a plenary action.

Accordingly, we agree with the District Court that plaintiffs' claim depends solely on the definition of a fraudulent transfer under DCL § 273-a. To prevail under that section, "a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell III*, 579 F. App'x at 21 (quoting *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006)). We agree with the District Court that plaintiffs have met these requirements, and we reject as meritless Garrison's argument that the District Court erred (1) in finding that LPS's customer accounts were assets and in assigning them a value, (2) in finding that LPS, rather than Lyons, had owned and transferred the accounts to Garrison, and (3) in finding that the accounts had been transferred without the payment of fair consideration.

Because this appeal follows a bench trial, "we review the district court's findings of fact for clear error and conclusions of law and mixed questions *de novo*." *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001). As we noted the last time this case was before us, a company's "book of business" may be an asset under New York law. *See* 579 F. App'x at 22 (citing cases). The value of a particular asset is a question of fact, as is whether a transfer occurred and whether fair consideration was paid. *See, e.g.*, *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711, 712 (2d Cir. 1991); *Matter of Estate of Corning*, 488 N.Y.S.2d 477, 481 (3d Dep't 1985). Here, the District Court found that the book of business in question was in fact

9

transferred to Garrison, that the book of business was worth at least $300,000, that it originally belonged to LPS (not Lyons), and that LPS itself received no consideration for the transfer. We see nothing in the District Court's thorough opinion to suggest that it erred in making these factual findings, much less clearly erred.[6]

## CONCLUSION

We have reviewed all of the arguments raised by Garrison on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the June 16, 2015 judgment of the District Court.

---

[6] Indeed, Garrison itself has described LPS's customer account list as a valuable "asset." The Consulting Agreement between Garrison and Lyons provided that "the names and addresses of Garrison's customers . . . are *valuable*, special and unique *assets* of the Garrison's business, *including the customers to be procured by [Lyons]*." App. 148 (emphasis supplied). The Consulting Agreement further specified that Garrison expected to derive "annual revenues of at least $1,379,622.00" from those accounts. App. 147.

10