16-3995-cv
*CSX Transp., Inc. v. Island Rail Terminal, Inc. et al*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term 2016

(Argued: September 25, 2017     Decided: January 10, 2018)

Docket No. 16-3995-cv

———————————

CSX TRANSPORTATION, INC.,

*Plaintiff-Counter-Defendant-Appellee,*

*v.*

ISLAND RAIL TERMINAL, INC., MAGGIO SANITATION SERVICE, INC., EASTERN
RESOURCE RECYCLING, INC.,

*Appellants,*

EMJAY ENVIRONMENTAL RECYCLING, LTD.,

*Defendant-Counter-Claimant.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

———————————

Before:

LIVINGSTON, LYNCH, and CHIN, *Circuit Judges.*

———————————

Appeal from a judgment and post-judgment order of the United States District Court for the Eastern District of New York (Seybert, *J.*), directing third-party garnishees to satisfy a creditor's judgment against a judgment debtor as damages for the garnishees' violation of certain restraining notices.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

---

JEFFREY D. COHEN, Keenan Cohen & Merrick P.C., Philadelphia, Pennyslvania, *for Plaintiff-Counter-Defendant-Appellee*.

JARRETT M. BEHAR, Sinnreich Kosakoff & Messina LLP, Central Islip, New York, *for Appellants.*

---

CHIN, *Circuit Judge*:

Third-party garnishees appeal from a judgment of the district court (Seybert, *J.*) directing them to turn over $1,056,444.15 to a judgment creditor to satisfy a judgment against a judgment debtor. The district court awarded the sum as damages for the garnishees' violation of certain restraining notices. The garnishees also appeal from the district court's post-judgment order denying their motion to alter the judgment.

On appeal, the garnishees principally argue that (1) plaintiff was required to commence a special proceeding against garnishees under New York

- 2 -

Civil Practice Law and Rules ("C.P.L.R.") article 52, instead of proceeding by motion; (2) garnishees did not violate the restraining notices under C.P.L.R. § 5222(b); and (3) the district court erred in awarding damages and doing so without holding a hearing.

We affirm in part and vacate and remand in part.

*BACKGROUND*

Plaintiff-counter-defendant-appellee CSX Transportation, Inc. ("CSX") is an interstate rail carrier. Defendant-counter-claimant Emjay Environmental Recycling, Ltd. ("Emjay") operates a waste transfer station. In 2012, appellant Island Rail Terminal, Inc. ("Island Rail") purchased "substantially all" of Emjay's assets for $3,572,011.52 pursuant to an Asset Purchase Agreement and Amended Promissory Note. Appellants Maggio Sanitation Services, Inc. ("Maggio") and Eastern Resource Recycling, Inc. ("Eastern Resource") guaranteed Island Rail's payment and performance obligations.

On September 25, 2014, the district court entered an amended judgment for CSX and against Emjay in this breach of contract suit for $1,056,444.15. We affirmed the judgment. *CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, 629 F. App'x 147 (2d Cir. 2015) (summary order). By this point, at

- 3 -

least three other creditors already held judgments against Emjay (based on unrelated claims): Environmental Logistics Services ("ELS") for $1,238,807.03, Sullivan Gardner for $294,318.82, and Matthew Crescimanni ("Crescimanni") for $402,013.83.

On November 12, 2014, CSX served third-party garnishees Island Rail, Maggio, and Eastern Resource (collectively, "Garnishees") with restraining notices (the "Restraining Notices") to aid its judgment entered in this case below.[1] The Restraining Notices prohibited Garnishees from "mak[ing] or suffer[ing] any sale, assignment or transfer of, or any interference with" and from "otherwise dispos[ing] of any [] debt" owed to Emjay, except as otherwise provided. N.Y. C.P.L.R. § 5222(b); *see also* App. 99, 107, 115 (restraining notices). By this point, at

---

[1] "A 'garnishee' is a person who owes a debt to a judgment debtor, or a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest." N.Y. C.P.L.R. § 105(i). A restraining notice is an enforcement device used in aid of an existing judgment that bears the caption of the underlying action. N.Y. C.P.L.R. § 5222, cmt. 5222:1 (practice commentary). It may be issued by the judgment creditor's attorney against the judgment debtor or a third party. *Id.* A restraining notice served upon a garnishee "serves as a type of injunction prohibiting the transfer of the judgment debtor's property." *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981); *see also* N.Y. C.P.L.R. § 5222, cmt. 5222:1 (practice commentary) ("With ordinary money judgments, it is usually the attorney who issues the restraining notice, acting as an officer of the court in so doing. In that instance, the restraint results without a court order or any other preliminary judicial authorization. It is a rare example of an injunction, complete with contempt punishment as its sanction, not embodied in a court order or judgment.").

least two creditors, Crescimanni and ELS, had already served writs of execution for their judgments against Emjay.[2]

Approximately three months later, on February 26, 2015, the New York State Supreme Court, Suffolk County, approved a consolidated $2.2 million settlement (the "State Settlement Order") in two unrelated actions involving Emjay, Garnishees, and several of Emjay's other creditors, including ELS, Sullivan Gardner, and Crescimanni.[3] CSX, after joining early settlement talks at the invitation of the parties in the state court proceedings, ultimately declined to participate. Under the terms of the settlement, Garnishees settled the claims asserted by Emjay for $2.2 million, which was then distributed to creditors ELS, Sullivan Gardner, and Crescimanni to satisfy their judgments against Emjay. The state court "so ordered" the settlement. App. 154.

On June 12, 2015, CSX filed a motion for a turnover order to compel Garnishees to satisfy CSX's September 25, 2014 amended judgment against

---

[2]    Garnishees belatedly corrected the date of ELS's writ of execution from March 10, 2015 to November 5, 2014 in a letter motion to alter the judgment. Letter Mot. to Alter J. 1, *CSX Transp. v. Island Rail Terminal, Inc.*, No. 12-cv-1865 (E.D.N.Y. Nov. 4, 2016), ECF No. 100. As discussed further below, the district court declined in its discretion to consider the new fact. Elec. Order Den. Letter Mot. to Alter J., *CSX Transp. v. Island Rail Terminal, Inc.*, No. 12-cv-1865 (E.D.N.Y. Dec. 1, 2016).

[3]    In the first of those actions, Emjay sued Garnishees to recover the $3.5 million purchase price from the asset sale, and Garnishees raised various counter-claims. In the second, ELS, Sullivan Gardner, and Crescimanni sued Emjay for unpaid judgments.

Emjay, as entered by the district court in this case. In its motion, CSX also argued, alternatively, that Garnishees were liable to CSX for damages because entering into the state settlement violated the Restraining Notices. While the motion was pending, on June 24, 2015, Garnishees issued a check to CSX for $8,015.03 -- the "remainder of the proceeds of the settlement of the [Garnishees'] debt to Emjay pursuant to the" State Settlement Order. App. 230-31. The remaining settlement payments to ELS, Sullivan Gardner and Crescimanni were paid out before this check was issued, but the dates of these payments do not appear to be included in the record. On or about July 9, 2015, CSX served writs of execution for its judgment.

On February 25, 2016, the district court granted CSX's motion for a turnover order and directed Garnishees to turn over $1,056,444.15 to CSX. The district court also held that "to the extent that the Garnishees already made disbursements under the [State] Settlement Order, CSX is entitled to damages in the amount of the Judgment: $1,056,444.15." Sp. App. 12. As to damages, the court explained that the Garnishees "acted negligently by ignoring the Restraining Notices because only an order from this Court could alter the Garnishees' obligations." Sp. App. 13. If Garnishees had not violated the

Restraining Notices by paying out the $2.2 million state settlement, the district court concluded, the Garnishees would still have had $1,056,444.15 available, the amount of CSX's unsatisfied judgment.

On March 2, 2016, CSX moved the court to enter judgment against Garnishees on the ground that Garnishees already disbursed funds pursuant to the state settlement. On March 10, 2016, Garnishees moved for reconsideration of the district court's February 25, 2016 turnover order. In their motion, Garnishees objected to the district court's failure to hold a hearing and also requested oral argument on their motion.

On November 2, 2016, without holding oral argument or providing a hearing, the district court denied Garnishees' motion for reconsideration and granted CSX's motion to enter judgment against Garnishees, reaffirming that Garnishees would have been able to satisfy CSX's judgment of $1,056,444.15 if Garnishees had not violated the Restraining Notices by distributing funds pursuant to the $2.2 million state settlement. Although the court's initial order rested on the mistaken premise that the settlement funds were still available at the time of judgment, the court clarified that its "ultimate conclusion rested on a damages analysis," Sp. App. 25, not a turnover analysis, and that Garnishees

- 7 -

remained liable. As to damages, the court recognized that the Restraining Notices did not grant priority and agreed that priority creditors should be paid first. Based on the information before it, the court concluded that only Crescimanni's property execution granted him a superior right over CSX, and that offsetting Crescimanni's judgment of $402,013.83 still would have left sufficient funds for Garnishees to satisfy CSX's judgment. Finally, the court concluded that Garnishees "have not raised any issues of fact" and thus it "need not hold a hearing to determine the proper judgment amount." Sp. App. 33. The Second Amended Judgment was issued on November 8, 2016, and awarded CSX damages in the amount of $1,056,444.15 against Garnishees.

On November 4, 2016, Garnishees moved by letter to alter the judgment on two grounds, which they contended would reduce the judgment to $201,945.11. On December 1, 2016, the district court issued an order electronically denying Garnishees' motion. First, the district court declined to consider new evidence demonstrating that ELS served its property execution several months earlier -- thereby granting it priority *before* the State Settlement Order -- because Garnishees failed to show that they were "justifiably ignorant" of the evidence "despite due diligence." Elec. Order Den. Mot. to Alter J., *CSX*

- 8 -

*Transp. v. Island Rail Terminal, Inc.*, No. 12-cv-1865 (E.D.N.Y. Dec. 1, 2016) (quoting *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011)). Second, the district court concluded that accounting for statutory interest, which it omitted in its initial damages calculations, would not have affected its ultimate conclusion that Garnishees had sufficient funds to satisfy CSX's judgment.

This appeal followed.

### DISCUSSION

We review a district court's ruling on a request for an order of attachment for abuse of discretion. *Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 84-85 (2d Cir. 2014). We also review a district court's denial of an evidentiary hearing for abuse of discretion. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "The district court abuses its discretion if it applies legal standards incorrectly, relies on clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law." *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009) (citation omitted). We review *de novo* a district court's interpretation of questions of New York law. *See Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 113-14 (2d Cir. 2014).

Because the district court indicated that its "ultimate conclusion rested on a damages analysis," Sp. App. 25, not a turnover analysis, we confine the scope of our review to the damages theory. Three principal issues are presented. First, Garnishees argue that CSX improperly proceeded by motion under Rule 69(a) of the Federal Rules of Civil Procedure and that, instead, CSX should have instituted a special proceeding against Garnishees pursuant to C.P.L.R. article 52 for the district court to obtain personal jurisdiction. Second, Garnishees argue that they did not violate the Restraining Notices because they transferred funds pursuant to an order of the state court, and C.P.L.R. § 5222(b) permits transfers "pursuant to an order of the court." Third, Garnishees contend that even if they did violate the Restraining Notices, the district court erred in concluding that CSX suffered damages when CSX was the creditor "last in line," Appellants' Br. 29, and in failing to hold a hearing before fixing the amount of damages.[4]

---

[4] CSX suggests that Garnishees' appeal is limited to the denial of the motion for reconsideration. But Garnishees' Amended Notice of Appeal identifies the initial turnover order, the order denying their motion for reconsideration, the Second Amended Judgment, as well as the district court's post-judgment order denying their motion to alter the judgment. CSX offers no argument for limiting the scope of our review to the single order denying the motion for reconsideration. We therefore consider and resolve Garnishees' appeal of all relevant orders in this dispute.

## I.     Procedure for Enforcing Money Judgments

First, we agree with the district court that CSX was permitted to seek relief from Garnishees by motion under Rule 69(a), rather than by instituting a special proceeding pursuant to New York law.  *See* Fed. R. Civ. P. 69(a).

### A.     Applicable Law

A motion to enforce a money judgment is governed by Rule 69(a), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located."  *Id.*  In New York, C.P.L.R. article 52 governs the enforcement and collection of money judgments.  *See* N.Y. C.P.L.R. §§ 5201-5252.  Section 5225(b) enables a judgment creditor to commence a "special proceeding" against a third party who "is in possession or custody of money or other personal property" in which the judgment debtor has an interest.  *Id.* § 5225(b).[5]  Section 5227 allows a judgment creditor to commence a special proceeding against a third party "who

---

[5]     Section 5225(b) provides in pertinent part:
Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money . . . .

it is shown is or will become indebted to the judgment debtor." *Id.* § 5227.[6]

Violation of a restraining notice subjects a garnishee to personal liability in a

special proceeding under C.P.L.R. article 52 or a separate plenary action. *Cruz v.*

*TD Bank, N.A.*, 22 N.Y.3d 61, 77-78 (2013). C.P.L.R. article 4 sets forth the

procedure for special proceedings. *See* N.Y. C.P.L.R. §§ 401-411.

## B. Application

Although we have assumed in prior cases that parties may seek

turnover orders by motion, we have not squarely addressed the issue. *See, e.g.,*

*Vera v. Republic of Cuba*, 802 F.3d 242, 244 n.3 (2d Cir. 2015); *HBE Leasing Corp. v.*

*Frank*, 48 F.3d 623, 633 & n.7 (2d Cir. 1995).[7] We now hold that a party seeking a

---

[6]      Section 5227 provides in pertinent part:
Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

[7]      District courts in this circuit have also consistently allowed parties to request turnover orders by motion rather than by special proceeding. *See, e.g., Bernard v. Lombardo*, 2016 WL 7377240, at *5 (S.D.N.Y. Nov. 23, 2016); *Gen. Elec. Capital Corp. v. E. Bus. Sys.*, 2016 WL 3582061, at *2 (E.D.N.Y. June 28, 2016); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 2015 WL 9460131, at *4 (E.D.N.Y. Dec. 23, 2015*); Universitas Educ., LLC v. Nova Grp., Inc.*, 2014 WL 3883371, at *8 (S.D.N.Y. Aug. 7, 2014); *SEC v. Vuono*, 2013 WL 6837568, at *3 (E.D.N.Y. Dec. 26, 2013); *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581-82 (S.D.N.Y. 2012); *JW Oilfield Equip., LLC v. Commerzbank, AG*, 764 F. Supp. 2d 587, 591 (S.D.N.Y. 2011); *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010). *But see Wasserman Media Grp., LLC v. Bender*, 2012 WL 1506181, at *3

money judgment against a non-party garnishee may proceed by motion and need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee. We reach this conclusion for three reasons.

First, a special proceeding is a procedural vehicle under New York law with no equivalent under the Federal Rules of Civil Procedure, which recognize only "one form of action -- the civil action." Fed. R. Civ. P. 2; *see Mitchell v. Garrison Prot. Servs., Inc.*, 819 F.3d 636, 640 (2d Cir. 2016) (per curiam). It is therefore "unclear" how a party in a federal district court in New York could comply with the special proceeding requirements, *Mitchell*, 819 F.3d at 640, which we have indicated "need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues," *Vera*, 802 F.3d at 244 n.3.

Second, a special proceeding is more akin to motion practice than a plenary action. *See HBE Leasing Corp.*, 48 F.3d at 633 (summary relief available in a special proceeding under C.P.L.R. article 52); *O'Brien-Kreitzberg & Assocs. v. K.P., Inc.*, 630 N.Y.S.2d 76, 76 (1st Dep't 1995) (action seeking to enforce a money

---

(S.D.N.Y. 2012) ("[P]etitioner's motion for a turnover order in the instant action is procedurally defective . . . . If petitioner seeks a turnover order, it must bring a separate action . . . ."); *Runaway Dev. Grp. v. Pentagen Techs. Int'l Ltd.*, 396 F. Supp. 2d 471, 473-74 (S.D.N.Y. 2005) (same).

judgment is "more appropriately obtained in a supplementary special proceeding pursuant to [C.P.L.R.] article 52 rather than a plenary action" (citation omitted)). *See generally* C.P.L.R. § 401, cmt. 401:1 (practice commentary) ("Like an action, [a special proceeding] ends in a judgment [], but the procedure is similar to that on a motion []. Speed, economy and efficiency are the hallmarks of this procedure."); David D. Siegel, *New York Practice* § 547 (5th ed. 2017) ("A special proceeding is . . . . as plenary as an action, culminating in a judgment, but is brought on with the ease, speed, and economy of a mere motion.").

Third, New York law explicitly contemplates that proceedings brought as motions may, if necessary, be converted to special proceedings by the court. Under C.P.L.R. § 103(c), "[i]f a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form . . . . If the court finds it appropriate in the interests of justice, it may convert a motion into a special proceeding . . . ." *See also Jackson v. Bank of Am., N.A.*, 53 N.Y.S.3d 71, 74-75 (2d Dep't 2017) (citing C.P.L.R. § 103(c) and refusing to dismiss an action for failure to commence a special proceeding under article 52, even where that provision provided the exclusive remedy). The court must, however, have personal jurisdiction over the parties. *See* N.Y.

C.P.L.R. § 103(c); *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 64 (2013) ("[P]ersonal jurisdiction is the linchpin of authority under section 5225(b).").

Accordingly, we conclude that CSX was not required to institute a separate proceeding against Garnishees and could proceed by motion under Rule 69(a), so long as the district court otherwise had personal jurisdiction over Garnishees. Here, personal jurisdiction is clear: Garnishees do not contest that they are New York corporations with their principal places of business in the Eastern District of New York. Although Garnishees contend that no summons was served, the record reflects that CSX complied with Rule 4 of the Federal Rules of Civil Procedure by serving the summons on Cathy McByrne, a person authorized to accept service on behalf of Vincent Maggio, Jr., Chief Executive Officer for Garnishees. We therefore conclude that the district court properly allowed CSX to proceed by motion.

## II. Statutory Construction of C.P.L.R. § 5222

Second, Garnishees argue that they did not violate the Restraining Notices because they transferred the restrained funds pursuant to the state court's settlement order, and C.P.L.R. § 5222(b) authorizes disbursements

- 15 -

"pursuant to an order of the court." We agree with the district court that the plain meaning of the statute does not support Garnishees' interpretation.

## A. Applicable Law

Under C.P.L.R. § 5222, an attorney for the judgment creditor may, as an officer of the court, serve a restraining notice on a third party who "owes a debt to the judgment debtor or . . . is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor . . . has an interest." N.Y. C.P.L.R. § 5222(a)-(b). A party subject to a restraining notice is "forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt . . . except upon direction of the sheriff or pursuant to *an order of the court* . . . ." *Id.* § 5222(b) (emphasis added). A court has broad authority to regulate the use of enforcement devices. *Id.* § 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.").

**B.      Application**

"In determining the law of the State of New York, 'we will consider not only state statutes but also state decisional law.'" *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 370 (2d Cir. 1999) (citation omitted).  Here, the parties have not cited and we are unaware of any New York cases that precisely address the issue before us, so "we will carefully predict how the highest court of the state would resolve the uncertainty or ambiguity" by "consider[ing] all of the resources to which the highest court of the state could look."  *Id.* (citations omitted).  We begin by examining the text of the statute to discern whether it has a plain and unambiguous meaning.  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012); *see also Elliott*, 194 F.3d at 371 (noting that we "look first to the plain language of a statute and interpret it by its ordinary, common meaning" when interpreting a New York statute (citation omitted) (internal quotation marks omitted)).  The meaning of a statute can be understood "in context with and by reference to the whole statutory scheme, by appreciating how sections relate to one another."  *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002).  "A statute should be interpreted in a way that avoids absurd

results." *United States v. Venturella*, 391 F.3d 120, 126 (2d Cir. 2004) (quoting *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)).

Here, the plain and unambiguous meaning of C.P.L.R. § 5222(b) is that "the" court refers to the court out of which the restraining notice issued. The use of the definite article "the" indicates a singular court, whereas the indefinite article "any" or "a" denotes multiple courts. *See Nat'l Foods, Inc. v. Rubin*, 936 F.2d 656, 660 (2d Cir. 1991) ("[a]bsent some reason to conclude otherwise . . . 'the court' referred to the second time . . . should be the same one referred to the first time -- a 'court of competent jurisdiction'"); *see also Renz v. Grey Advert., Inc.*, 135 F.3d 217, 222 (2d Cir. 1997) ("Placing the article 'the' in front of a word connotes the singularity of the word modified. . . . In contrast, the use of the indefinite article 'a' implies that the modified noun is but one of several of that kind.").

In addition, as the district court explained, permitting a second court to dissolve a restraining notice issued out of the first court would injure the rights of creditors and threaten the first court's injunctive power. *See Nardone v. Long Island Tr. Co.*, 336 N.Y.S.2d 325, 327 (2d Dep't 1972) (recognizing that a stay contained in an ex parte order "did not serve to suspend the effectiveness of the restraining notice"; "otherwise, any judgment debtor could obtain such an order,

- 18 -

without notice to the court that a restraining notice had been served, or to the judgment creditor, and recover his property theretofore properly made the subject of the restraining notice"); *see also Sumitomo Shoji New York, Inc. v. Chem. Bank N.Y. Tr. Co.,* 263 N.Y.S.2d 354, 358-59 (N.Y. Sup. Ct. 1965), *aff'd*, 267 N.Y.S.2d 477 (1st Dep't 1966) (discussing legislative history of C.P.L.R. § 5222 as favorable to judgment creditors in light of governor's veto of an amendment that would "unnecessarily hamper judgment creditors in the collection of their judgments"). We therefore agree with the district court that the phrase "an order of the court" in C.P.L.R. § 5222(b) refers *only* to the court out of which the restraining notice issued. Although Garnishees contend that our reading undermines the broad authority conferred on New York courts by C.P.L.R. § 5240, there is no suggestion that the state court, in "so ordering" the settlement, intended to lift the Restraining Notices issued out of the federal district court. Indeed, the State Settlement Order does not mention CSX, let alone the Restraining Notices. The order therefore did not dissolve Garnishees' obligations under the Restraining Notices.

We also agree with the district court that Garnishees negligently violated the Restraining Notices. The Restraining Notices "serve[d] as a type of

injunction prohibiting the transfer of the judgment debtor's property." *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981). After Garnishees were served with the Restraining Notices, they were "forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property" in which the judgment debtor Emjay is known or believed to have an interest. N.Y. C.P.L.R. § 5222(b). Garnishees were properly served with the Restraining Notices on November 12, 2014, and the Restraining Notices' injunctive effect was still in place on February 26, 2015, when Garnishees agreed to pay $2.2 million on behalf of Emjay to settle Emjay's debts to ELS, Sullivan Gardner, and Crescimanni in the State Settlement Order. The Garnishees do not dispute that Emjay clearly had an interest in the $2.2 million that Garnishees paid on Emjay's behalf in that settlement. *See Ray v. Jama Prods., Inc.*, 425 N.Y.S.2d 630, 631 (2d Dep't 1980) ("The fact that a judgment debtor will directly benefit from the payment [to satisfy the judgment debtor's debts] is sufficient to require the party served with the restraining notice to comply with the provisions or be subject to the appropriate legal sanctions."). In such circumstances, while Garnishees were entitled to contest the validity of the district court's Turnover Order, they were not free to simply ignore the injunctive effect of the Restraining Notices. *See*

*Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) ("A garnishee has no discretion to ignore a restraining notice that is valid on its face . . . even if it questions the legal foundation on which the notice is based.").  Garnishees plainly violated the Restraining Notices in doing so.

### III.    Damages

Third, Garnishees argue that even if they did violate the Restraining Notices, CSX is not entitled to recover because CSX sustained no damages as the creditor "last in line" under New York law on priority of judgments.  Appellants' Br. 29.  Relatedly, Garnishees contend that the district court erred by failing to hold a hearing, entertain testimony, or receive admissible evidence before holding them liable for CSX's unpaid judgment.  For the reasons set forth below, we conclude that the district court abused its discretion by failing to hold a hearing to resolve factual issues concerning the relative priorities of judgment creditors -- a necessary predicate to determining the proper amount of damages, if any, sustained by CSX.

### A.    Applicable Law

A garnishee that violates a restraining notice may be liable to an aggrieved judgment creditor if the creditor establishes that "it sustained damages

as a result of the garnishee's disobedience of the [restraining] notice." *Aspen Indus.*, 52 N.Y.2d at 581. To establish damages, a creditor must "demonstrate that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect." *Id.*; *see also Nardone*, 336 N.Y.S.2d at 327 (damages for violating a restraining notice are "the amount of the judgment remaining unsatisfied, but limited to the amount in the account which would have been available to satisfy the judgment"). In *Aspen*, for instance, a judgment creditor could not establish damages resulting from a garnishee bank's violation of restraining notices, because the garnishee bank had a superior right of setoff to any debt owed to it by the judgment debtor based on section 151 of the Debtor and Creditor law. 52 N.Y.2d at 581-82.

New York has a comprehensive statutory scheme establishing priorities for directing the assets of a judgment debtor to competing judgment creditors. Under C.P.L.R. § 5234, "the order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies and the filing of orders for turnover." *City of New York v. Panzirer*, 259 N.Y.S.2d 284, 286 (1st Dep't 1965) (citing N.Y. C.P.L.R. § 5234(c)). "The mere service of restraining notices under [§] 5222 . . . does not invoke standing in the

ranking of priorities."  *Id.; Aspen Indus.*, 52 N.Y.2d at 579-80.  Instead, a judgment

creditor must take additional steps -- such as securing a turnover order or an

execution levy -- to prevent intervening parties from attaining higher priority.

*See Aspen Indus.*, 52 N.Y.2d at 580.

A court "may grant summary relief where there are no questions of

fact, but 'it must conduct a trial on disputed issues of fact on adverse claims in a

turnover matter.'"  *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995)

(quoting *General Motors Acceptance Corp. v. Norstar Bank of Hudson Valley*, 549

N.Y.S.2d 862, 863 (3d Dep't 1989)); *see also Port of New York Auth. v. 62 Cortlandt*

*St. Realty Co.*, 18 N.Y.2d 250, 255 (1966) (standards of summary judgment apply

to special proceedings); *Gonzalez v. City of New York*, 8 N.Y.S.3d 290, 291 (1st

Dep't 2015) ("It is settled that a special proceeding is subject to the same

standards and rules of decision as apply on a motion for summary judgment,

requiring the court to decide the matter 'upon the pleadings, papers and

admissions to the extent that no triable issues of fact are raised.'" (citations

omitted)).  In general, a hearing is required to fix damages where it is unclear

what amount in a garnishee's possession is the property of the judgment debtor

and available to satisfy the judgment.  *See Nardone*, 336 N.Y.S.2d at 327.  Absent a

factual issue concerning damages, however, a hearing is not required. *See, e.g.,* *Gen. Motors Acceptance Corp.*, 549 N.Y.S.2d at 863 ("Although a court may grant summary relief where there are no questions of fact in a special proceeding, it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." (citing N.Y. C.P.L.R. §§ 409(b), 5225(b), 5239)); *Michigan Assocs. v. Emigrant Sav. Bank*, 345 N.Y.S.2d 329, 336 (Civ. Ct. 1973) (determining damages without any hearing because "there is no issue of fact concerning damages").

## B. Application

To recover damages for Garnishees' violation of the Restraining Notices, CSX had to demonstrate that the "property of the judgment debtor [Emjay] was available to satisfy the judgment at the time the restraining notice was in effect." *Aspen Indus.*, 52 N.Y.2d at 581. In other words, CSX had to demonstrate that Garnishees' debt to Emjay was available to satisfy CSX's judgment. Garnishees' debt to Emjay, in turn, had to be assessed in light of the priority of Emjay's various creditors pursuant to C.P.L.R. § 5234 -- because if other creditors had superior claims to the restrained funds before Garnishees violated the Restraining Notices, then CSX did not suffer damages.

Here, the district court recognized that the Restraining Notices did not confer priority and that priority creditors were entitled to be paid first. After reviewing the timeline of judgments and executions, the district court concluded that only Crescimanni served an execution before the state court's February 26, 2015 settlement order that "grant[ed] him a superior right." Sp. App. 28. Therefore, the district court found, "even if the Court preserved the $2.2 million settlement figure and offset Crescimanni's $402,013.83 judgment, the Garnishees would have had $1,797,986.17 left over to satisfy CSX's $1,056,444.15 judgment." Sp. App. 27. The district court concluded that "Garnishees have not raised any issues of fact" and that it "need not hold a hearing to determine the proper judgment amount." Sp. App. 33. The district court subsequently declined in its discretion to recognize new evidence from Garnishees demonstrating that ELS had actually served its execution on November 5, 2014 -- not March 10, 2015 -- thereby also granting ELS higher priority.

We conclude that, at a minimum, the parties' submissions and the record demonstrate a lack of clarity as to the order of priority of judgment creditors, precluding the district court's grant of summary relief to CSX.

At the time of judgment, the order of priority was unclear. The record shows that, during state court proceedings on February 24, 2015, the participating judgment creditors -- including Crescimanni, ELS and Sullivan Gardner -- indicated that they believed, "[w]ithout fixing the priorities in any way between us, we all had a higher priority than CSX." App. 190. CSX's counsel was informed of the competing judgment creditors' views as to priority. *Id.* at 191. On June 26, 2015, Garnishees alleged in their opposition to CSX's turnover motion that "other than serving its Restraining Notices, CSX did nothing to enforce its judgment and, unlike Emjay's other creditors whose claims have a priority position, took no steps whatsoever to create or perfect an enforceable lien." *Id.* at 125. On the other hand, CSX never asserted that it had a higher priority than any of the other creditors, and in fact even now suggests that priority is not relevant to damages. We reject CSX's argument because, as noted above, damages cannot be assessed without delineating the relative priority of judgment creditors.

The district court did not consider priorities when it invited CSX to apply for a judgment for damages in its initial turnover order. It did correctly recognize the importance of priority in its subsequent order denying Garnishees'

motion for reconsideration. But the district court's final reasoning suggests that, had it possessed a complete picture of the relevant players and priorities before judgment, it might have reached a different outcome. And while the district court rejected as untimely Garnishees' submission regarding the correct date of ELS's execution, a hearing would have given Garnishees the opportunity to present this evidence.

Failure to resolve these factual issues before summarily awarding damages to CSX was an abuse of discretion. Therefore, we vacate that portion of the district court's judgment and orders holding CSX liable for $1,056,444.15 in damages, and remand with instructions for the district court to hold a hearing to resolve factual issues concerning damages including, but not limited to, the order of priority of judgment creditors. During the hearing, the district court should, at minimum, revisit the two factual issues that Garnishees raised in their letter motion to alter the judgment.

## CONCLUSION

For the reasons set forth above, we **AFFIRM IN PART**, **VACATE IN PART**, and **REMAND** the case for further proceedings consistent with this opinion.