21-2043
*Christine Levinson et al. v. Kuwait Finance House (Malaysia) Berhad*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021

No. 21-2043

CHRISTINE LEVINSON, INDIVIDUALLY AND AS CONSERVATOR OF THE
ESTATE AND PROPERTY OF ROBERT LEVINSON, SUSAN LEVINSON
BOOTHE, STEPHANIE LEVINSON CURRY, SARAH LEVINSON MORIARTY,
SAMANTHA LEVINSON, DANIEL LEVINSON, DAVID LEVINSON,
DOUGLAS LEVINSON,

*Plaintiffs-Appellees,*

v.

KUWAIT FINANCE HOUSE (MALAYSIA) BERHAD,

*Defendant-Intervenor-Appellant.* [*]

Appeal from the United States District Court
for the Southern District of New York.
No. 21-4795

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

1

Loretta A. Preska, District Judge, Presiding.

(Argued March 29, 2022; Decided July 21, 2022)

Before: PARKER, PARK, and ROBINSON, *Circuit Judges*.

Appeal from an order of the United States District Court for the Southern District of New York (Preska, *J.*) granting Appellees' motion for a writ of execution against the assets of Appellant. We **VACATE** the order and **REMAND** for proceedings consistent with this opinion.

———————————————

DANIEL W. LEVY, McKool Smith P.C., New York, NY, *for Plaintiffs-Appellees.*

CHARLOTTE H. TAYLOR (Noel J. Francisco, Steven T. Cottreau, Jones Day, Washington, D.C.; Fahad A. Habib, Jones Day, San Francisco, CA; Andrew J. Pincus, Charles A. Rothfeld, Mayer Brown LLP, Washington, D.C.; Mark G. Hanchet, Christopher J. Houpt, Cleland B. Welton II, Robert W. Hamburg, Mayer Brown LLP, New York, NY, *on the brief*), Jones Day, Washington, D.C., *for Defendant-Intervenor-Appellant.*

———————————————

BARRINGTON D. PARKER, *Circuit Judge*:

Under the Foreign Sovereign Immunities Act of 1976 (FSIA), foreign states and their agencies and instrumentalities are immune from suit in the United States, and their property is immune from attachment and execution. *See* 28 U.S.C.

§§ 1604, 1609. These immunities, however, contain exceptions. One exception allows parties to sue foreign state sponsors of terrorism for damages for claims arising out of acts of terrorism. *See* 28 U.S.C. § 1605A(a). Another exception, the Terrorism Risk Insurance Act of 2002 (TRIA), allows parties to satisfy FSIA judgments using attachment or execution against certain property—"blocked assets"—of the foreign state and of any of its "agenc[ies] or instrumentalit[ies]." *See* TRIA § 201(a).

The Levinsons hold an FSIA judgment against the Islamic Republic of Iran. Based on that judgment, the Levinsons moved for a writ of execution against the assets of Kuwait Finance House (KFH) Malaysia in the Southern District of New York. The District Court granted the writ before making any findings as to whether KFH Malaysia is an "agency or instrumentality" of Iran or whether the assets at issue are "blocked." The primary issue in this appeal is whether TRIA permits those assets to be executed upon prior to such findings. Our answer is no.

**BACKGROUND**

The Levinsons are family members of Robert Levinson, a United States citizen who in early 2007 was captured by an unidentified terrorist organization. The Levinsons sued Iran under the FSIA in the United States District Court for the

3

District of Columbia, alleging that, among other things, Iranian security forces arrested and for years tortured Levinson, who is now presumed dead.[1] Iran failed to appear in the action, and the District Court entered a $1.5 billion default judgment.

Seeking to enforce their judgment, the Levinsons commenced a turnover proceeding in the Southern District of New York against Citibank, N.A., under New York CPLR Sections 5225 and 5227[2]. The sealed complaint alleged that KFH Malaysia—a foreign retail and commercial bank—is an "agency or instrumentality" of Iran whose assets, including those located in its New York Citibank account, are subject to forfeiture under TRIA. The complaint also alleged that KFH Malaysia and related entities "are acting as agen[cies] or instrumentalities, on behalf, and at the direction, of" the National Iranian Oil Company (NIOC).

---

[1] The Federal Bureau of Investigation (FBI) investigated the disappearance and "concluded that Iran had attempted to create a false narrative that Robert Levinson was being held captive by an unnamed terrorist organization as part of an effort by Iran to avoid responsibility for Robert Levinson's being taken hostage and his torture." Joint App'x at 5.

[2] The statutes are entitled "Payment or delivery of property of judgment debtor" and "Payment of debts owed to judgment debtor," respectively.

About the same time the Levinsons filed the sealed complaint, they also moved *ex parte* for a writ of execution against the assets contained in KFH Malaysia's Citibank account. The motion contended that those assets were funds held on behalf of an identified shell company used by NIOC. In support of their allegations, the Levinsons submitted the ████████████████████████ ██████████████████████████████.[3] ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████. The Levinsons also provided a declaration from a banking expert with experience in matters relating to sanctions and terrorist financing who ██████████████ ████████████████████████████████████████.

On June 14, 2021, the District Court granted the motion for a writ of execution, directing the U.S. Marshal to "levy and collect" the assets held in KFH Malaysia's Citibank account in the sum of $1.457 billion. The next day, the U.S. Marshals Service served the writ on Citibank. Three days later, Citibank informed KFH Malaysia that it had frozen the Citibank account. As a result, to this day, KFH

---

[3] The Levinsons have, ████████████████████████████████████ to the District Court.

Malaysia has no control over the funds in that account and alleges that it must turn away customers who seek to make transactions in United States Dollars. Citibank continues to hold these assets.

The next month, KFH Malaysia submitted an emergency order to show cause, seeking to intervene as of right, to vacate the writ of execution, and to file counterclaims against the Levinsons. Among other things, KFH Malaysia submitted a declaration, supported by documents and account records, that undermined the veracity of the Levinsons' allegations, ████████████████ ████████████████████████████████ .

On July 27, 2021, the District Court heard argument on these motions. There, the Levinsons contended that even without the disputed transactions, they had provided sufficient evidence for the court to conclude that KFH Malaysia was an "agency or instrumentality" of Iran. ████████████████████████ ███████████████████████████████████ , setting out the relationship between the Appellant, its related entities, and Iran. In response, KFH Malaysia disputed that relationship, and contended that the Levinsons were not entitled to the writ because, among other reasons, the Levinsons "don't have a finding, a judicial ruling that [Appellant] is an agency or instrumentality."

At the hearing's conclusion, the court orally granted KFH Malaysia's motion to intervene but denied its motion to vacate the writ of execution as "premature in that there are disputed issues of fact." The court did not make any findings as to KFH Malaysia's purported status as an "agency or instrumentality" of Iran and held KFH Malaysia's proposed counterclaims in abeyance. Finally, the court directed the parties to confer on a discovery plan.

This appeal followed. KFH Malaysia challenges both the District Court's June 14th order issuing the writ of execution and its July 27th order[4] denying the motion to vacate the writ. The District Court granted a motion by KFH Malaysia to stay the writ and the District Court proceedings, conditioning the stay on KFH Malaysia's posting a bond equivalent to the amount in the Citibank account.

**DISCUSSION**

We review a district court's grant of a writ of execution for abuse of discretion. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 467 (2d Cir. 2018). A district court abuses its discretion when its decision rests on an error of law. *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168-69 (2d Cir. 2001).

---

[4] However, because we vacate the writ, this portion of the appeal is moot, and we do not consider it.

7

**I**

As an initial matter, the Levinsons have moved to dismiss this appeal for lack of appellate jurisdiction. We deny that motion.[5]

The courts of appeals have "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Whether a district court's order is appealable under Section 1291 "ordinarily 'depends on the existence of a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). Finality requires "'that there be some manifestation' by the district court that it intends the decision to be its 'final act in the case.'" *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) (quoting *Paliaga v. Luckenbach S.S. Co.*, 301 F.2d 403, 407 (2d Cir. 1962)).

The Levinsons contend that we lack jurisdiction to hear this appeal because the District Court's June 14th order granting the writ of execution is not "final" within the meaning of 28 U.S.C. § 1291. They argue principally that the District

---

[5] KFH Malaysia has filed a petition for a writ of mandamus in the event that we hold that we lack jurisdiction on direct appeal. *See In re: Kuwait Finance House*, Docket No. 21-2412. Because we do not so hold, we deny that petition.

Court did not manifest an intent that its order be final, as evidenced by its subsequent ruling that the parties would conduct discovery to resolve the factual question whether Appellant is as an "agency or instrumentality." We disagree.

The District Court's order granting the writ "commands" the U.S. Marshal of the Southern District of New York to "levy and collect" Appellant's funds from its Citibank account. Such a command is typically what happens at the end of a lawsuit. If the parties litigate a case involving damages to conclusion, the prevailing party obtains a judgment authorizing law enforcement to seize assets from the losing party and turn them over to the prevailing party. *See* Fed. R. Civ. P. 69 ("A money judgment is enforced by a writ of execution, . . . ."); *accord Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 269 (2d Cir. 2003). That is what occurred here—except there was no verdict, no findings, and no judgment against the party whose assets were seized by the government. Under these circumstances, a court's later observations about a need for discovery do not establish a lack of finality.

This conclusion finds support in caselaw from this Circuit and others. In *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009), the Republic of Argentina appealed from a district court's order of execution over certain of its funds under FSIA. We held that we had jurisdiction. *See id.* at 123-24.

Likewise, in *Hewlett-Packard Company v. Quanta Storage, Inc.*, 961 F.3d 731, 741–42 (5th Cir. 2020), the court held that "orders . . . requiring defendants to transfer property to plaintiffs . . . dispose of claims to that property. And these types of orders have long been treated as final and appealable." *See also* 15A FED. PRAC. & PROC. JURIS. § 3910 ("Appeals continue to be permitted from orders that direct immediate execution of judgment or delivery of property to an opposing party . . . ."). We see no reason to depart from these holdings. Accordingly, we conclude that we have jurisdiction.

## II

We next turn to the District Court's order granting the writ of execution. KFH Malaysia contends that the Levinsons failed to meet their burden to establish their entitlement to the writ and the District Court therefore committed legal error in granting it. We agree.

### A

The FSIA provides that foreign states, as well as their agencies and instrumentalities, enjoy absolute immunity from suit and from the attachment and execution of their assets, and these immunities fall away only under "certain express exceptions." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822 (2018). One

such exception allows parties to bring suits against foreign states based on acts of terrorism. 28 U.S.C. § 1605A(a). Another such exception, TRIA, allows FSIA judgment holders to enforce their judgments using attachment or execution, and provides that:

> Notwithstanding any other provision of law . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism . . . the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), Pub. L. No. 107-297, 116 Stat. 2337, codified at 28 U.S.C. § 1610 note.

TRIA itself, however, provides no procedures for enforcement. In seeking attachment or execution, therefore, a judgment holder must follow the procedures of state law and, to the extent it applies, federal law. *See* Fed. R. Civ. P. 64, 69.

As noted, the Levinsons obtained a default judgment against Iran under an FSIA exception in the District of Columbia. Next, they sought to enforce that judgment in the Southern District of New York under TRIA by executing on the assets of KFH Malaysia. In so doing, they took two steps. First, they moved to commence a turnover proceeding pursuant to CPLR § 5225(b). That section

11

provides for the enforcement of money judgments through property not in the hands of the judgment debtor:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff. Costs of the proceeding shall not be awarded against a person who did not dispute the judgment debtor's interest or right to possession. Notice of the proceeding shall also be served upon the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested. The court may permit the judgment debtor to intervene in the proceeding. The court may permit any adverse claimant to intervene in the proceeding and may determine his rights in accordance with section 5239.

*Id*. Second, the Levinsons moved *ex parte* for a writ of execution. Prior to the conclusion of the turnover proceeding, the District Court granted that motion—before KFH Malaysia had received any notice, and without making any findings about KFH Malaysia's connections to Iran.

That was legal error. To be entitled to attachment or execution under TRIA, a plaintiff must first establish defendant's status as an agency or instrumentality. *See, e.g., In re 650 Fifth Ave. & Related Props.*, 2021 WL 1963803, at *6 (S.D.N.Y. May

17, 2021); *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006). Put another way, before ordering assets to be seized under TRIA, a district court must make findings as to whether TRIA indeed permits those assets to be seized. *See Levin v. Bank of N.Y.*, No. 09-CV-5900, 2011 WL 812032, at *13 (S.D.N.Y. Mar. 4, 2011) ("In order to determine whether a turnover order can be issued . . . the Court must first determine whether these assets are subject to attachment."). And those findings must be made, as we have noted, in compliance with state law enforcement procedures.

Here, these procedures were not followed. Article 52 permits parties to commence turnover proceedings to enforce money judgments. *See* CPLR § 5225(b). Below, that turnover proceeding commenced, but the District Court granted the relief sought in that proceeding—a writ of execution—before it considered the antecedent issue of whether KFH Malaysia is an agency or instrumentality of Iran or whether the assets at issue are "blocked." Without such findings, there has been no showing that KFH Malaysia is in possession of property "in which the judgment debtor [Iran] has an interest." *Id.* Accordingly, the Levinsons failed to meet the statutory requirements under CPLR § 5225(b) and, consequently, they failed to establish that they were entitled to a writ of execution. *See Mohammad*

13

*Ladjevardian, Liana Corp. v. Republic of Argentina*, 663 F. App'x 77, 78 (2d Cir. 2016) (noting that "the district court correctly denied appellants' motion for a writ of execution and turnover order because the Republic does not have an interest in the . . . funds").

In the District Court, the Levinsons argued that they were moving for the writ of execution to prevent the "dissipation of the . . . [a]ssets." Joint App'x at 39. In other words, the Levinsons contend that their objective was to ensure that KFH Malaysia could not withdraw the funds in question before they could be seized. On appeal, KFH Malaysia contends that the Levinsons could have achieved the same result by moving for attachment under CPLR Article 62, rather than for a writ execution. The Levinsons, on the other hand, contend that the "[e]nforcement of money judgments is simply *not* governed by CPLR Article 62."[6] Appellees' Br. at 39.

---

[6] We note that the TRIA on its face applies only to "blocked assets"—which the statute defines as "asset[s] seized or frozen by the United States under" one of two statutes. TRIA § 201(d)(2)(A). Under that definition, therefore, "blocked assets" are presumably those which a defendant has no power to dissipate. However, based on the Supreme Court's reasoning in *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), we held in *Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107 (2d Cir. 2016), that—regardless of whether it has been frozen or seized—any property belonging to the Government of Iran (as well as its agencies or instrumentalities) under the relevant executive orders is "blocked" within the meaning of TRIA, *see id.* at 137-41.

TRIA states that blocked assets "*shall* be subject to execution or *attachment* in aid of execution." § 201(a) (emphasis added). The Levinsons were therefore, consistent with state law, entitled to pursue pre-execution attachment procedures if they chose to do so. Under New York law, which governs attachment proceedings here, *see* Fed. R. Civ. P. 64, "an order of attachment may be granted in any action . . . when . . . the cause of action is based on a judgment, decree or order of a court of the United States." CPLR § 6201(5). Of course, the Levinsons possessed just such an order—a money judgment against Iran. Accordingly, state law permitted them to pursue attachment procedures to, as the Levinsons have put it, "prevent the dissipation of" KFH Malaysia's assets. Joint App'x at 39. Thus, attachment is a possible remedy, among other interim remedies, available to the Levinsons, provided that they meet the applicable requirements.[7]

## CONCLUSION

For these reasons, we deny the Levinsons' motion to dismiss the appeal, deny KFH Malaysia's petition for a writ of mandamus, vacate the order granting

---

[7] Based on the record before us, we express no opinion as to whether the Levinsons are entitled to an order of attachment.

15

the writ of execution, and remand to the District Court for proceedings consistent with this opinion.